1  IRELL & MANELLA LLP
   John C. Hueston (CA Bar No. 164921)
2  *jhueston@irell.com*
   840 Newport Center Drive, Suite 400
3  Newport Beach, California 92660-6324
   Telephone:  (949) 760-0991
4  Facsimile:   (949) 760-5200

5  Alison L. Plessman (CA Bar No. 250631)
   *aplessman@irell.com*
6  Jeremiah D. Kelman (CA Bar No. 238298)
   *jkelman@irell.com*
7  1800 Avenue of the Stars, Suite 900
   Los Angeles, California 90067-4276
8  Telephone:  (310) 277-1010
   Facsimile:   (310) 203-7199

9
   Attorneys for Plaintiff
10 Pacific Select Fund

11            **UNITED STATES DISTRICT COURT**

12            **CENTRAL DISTRICT OF CALIFORNIA**

13                 **SOUTHERN DIVISION**

14 | PACIFIC SELECT FUND,          ) Case No. SACV 10-00198-JST (ANx)
                                    )
15 |           Plaintiff,           ) **PLAINTIFF PACIFIC SELECT**
                                    ) **FUND'S OPPOSITION TO**
16 |                                ) **DEFENDANTS' MOTION *IN***
                                    ) ***LIMINE* NO. 2 TO EXCLUDE**
17 |    v.                          ) **OPINIONS OF PLAINTIFF'S**
                                    ) **EXPERT ALLEN FERRELL**
18 | THE BANK OF NEW YORK           )
   | MELLON, a New York state chartered ) Assigned to the Hon. Josephine Staton
19 | bank; and BNY MELLON, N.A., a  ) Tucker
20 | nationally-chartered bank,      )
                                    ) Date:  April 16, 2012
21 |                                ) Time:  1:30 p.m.
   |         Defendants.            ) Ctrm:  10A
22 |                                )
                                    ) Complaint Filed:  February 17, 2010
23 |                                ) Trial Date:        May 1, 2012

24

25

26            <u>FILED CONDITIONALLY UNDER SEAL</u>

27

28

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2607384

Case No. SACV 10-00198-JST (ANx)
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MIL
NO. 2 TO EXCLUDE OPINIONS OF ALLEN FERRELL

# **TABLE OF CONTENTS**

                                                                                                    **Page**

I.      Introduction ................................................................................................. 1

II.     Statement of Facts ...................................................................................... 2

III.    There Is No Basis to Exclude Dr. Ferrell's Opinions ...................................... 4

        A.      Dr. Ferrell Is an Economics Expert with Extensive
                Knowledge of Structured Products and the Investment
                Industry ....................................................................................... 5

        B.      Dr. Ferrell's Opinion that BNYM Acted Imprudently by
                Holding Sigma Is Reliable ............................................................. 6

                1.      Dr. Ferrell's Opinion Is Based on Economic
                        Principles ........................................................................... 6

                2.      Dr. Ferrell Extensively Analyzed the Risks of
                        Holding Sigma .................................................................... 8

        C.      BNYM's Apparent Disagreement with Dr. Ferrell's
                Damages Calculations Is Not a Basis to Exclude Them .................. 11

                1.      Dr. Ferrell Considered the Liquidity of the Market
                        for Sigma ........................................................................... 11

                2.      Dr. Ferrell's Damages Analysis Is Not Based on
                        Hindsight ........................................................................... 15

                3.      Dr. Ferrell Properly Calculated Damages to PSF
                        from Hartford's In-Cash Redemption .................................. 17

IV.     Conclusion ................................................................................................ 18

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2607384

- i -

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Board of Trs. of AFTRA Ret. Fund. v. JPMorgan Chase Bank, N.A.,*
    No. 09 Civ. 686(SAS), 2011 WL 6288415 (S.D.N.Y. Dec. 15,
    2011)..........................................................................................................11, 14

*Burlington N., Inc. v. Boxberger,*
    529 F.2d 284 (9th Cir. 1975)........................................................................5

*Clemente v. California,*
    40 Cal. 3d 202 (1985).................................................................................15

*Daubert v. Merrell Dow Pharm., Inc.,*
    509 U.S. 579 (1993).......................................................................4, 10, 11

*Ellis v. Pa. Higher Educ. Assistance Agency,*
    No. CV 07-04498 DDP (CTx), 2008 WL 5458997 (C.D. Cal.
    Oct. 3, 2008)...............................................................................................10

*Kumho Tire Co. v. Carmichael,*
    526 U.S. 137 (1999) ....................................................................................4

*Mid-State Fertilizer Co. v. Exch. Nat'l Bank of Chicago,*
    877 F.2d 1333 (7th Cir. 1989).................................................................6, 7

*Scott v. Ross,*
    140 F.3d 1275 (9th Cir. 1998).....................................................................5

*United States v. Garcia,*
    7 F.3d 885 (9th Cir. 1993)...........................................................................6

*Viera v. City of El Monte,*
    No. CV 04-06082 MMM (Rzx), 2006 WL 6626761 (C.D. Cal.
    May 2, 2006) .........................................................................................4, 15

## Rules

Fed. R. Evid. 702 ...........................................................................................4, 5

## Other Authorities

6 Witkin, Summary 10th (2005) Torts, § 1551 .....................................................15

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2607384

Case No. SACV 10-00198-JST (ANx)
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MIL
NO. 2 TO EXCLUDE OPINIONS OF ALLEN FERRELL

# I.   **Introduction**

Defendants The Bank of New York Mellon and BNY Mellon, N.A.'s (collectively, "BNYM") motion *in limine* to exclude the opinions of Dr. Allen Ferrell, Pacific Select Fund's ("PSF") expert, is based on mischaracterizations of his experience, methodology, and conclusions.  When considered without BNYM's improper gloss, Dr. Ferrell's opinions are clearly admissible.

First, BNYM mischaracterizes Dr. Ferrell's background and experience, claiming that it is entirely academic.  As an initial matter, Dr. Ferrell's academic credentials are impressive.  Dr. Ferrell is an economics expert who has a Ph.D. (focusing on econometrics and finance) from the Massachusetts Institute of Technology.  He also has a J.D. from Harvard Law School where he is currently the Greenfield Professor of Securities Law.  These credentials alone are sufficient to qualify him as an expert.  However, Dr. Ferrell also has firsthand experience in the investment industry.  Dr. Ferrell formerly was a member of the Board of Economic Advisors to Financial Industry Regulatory Authority ("FINRA"), where he was responsible for reviewing FINRA's structured product rules.  Dr. Ferrell has also testified before Congress and other national and international organizations.

Second, BNYM mischaracterizes Dr. Ferrell's methodology, claiming that his opinions regarding the prudence of BNYM's decision to hold medium-term notes ("MTNs") issued by Sigma Finance Inc. ("Sigma") are not grounded in economic principles.  BNYM's claim is absurd.  Dr. Ferrell extensively analyzed the underlying factors that made holding Sigma so risky, including Sigma's structure, assets, and financing.  He also extensively analyzed the pricing for Sigma MTNs, relevant market commentary, and BNYM's own communications regarding Sigma, all of which indicated that the market concluded that Sigma carried a substantial risk of default.  In consideration of this information, Dr. Ferrell analyzed whether it was reasonable for BNYM to hold Sigma in view of the investment guidelines of the Mellon GSL DBT II Collateral Fund ("DBT"), concluding that holding Sigma was

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2607384                                    - 1 -

Case No. SACV 10-00198-JST (ANx)
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MIL
NO. 2 TO EXCLUDE OPINIONS OF ALLEN FERRELL

1  inconsistent with the key objective of safeguarding principal.  BNYM cannot

2  seriously challenge Dr. Ferrell's framework of comparing Sigma's risks to DBT's

3  own investment guidelines.  Indeed, it is the same framework used by BNYM's own

4  experts.

5      Third, BNYM mischaracterizes Dr. Ferrell's opinions on damages, claiming

6  that Dr. Ferrell:  (i) failed to consider the possibility that a liquidity discount would

7  have applied to the price at which Sigma could have been sold; (ii) should have

8  factored sales of securities other than Sigma into to his analysis; and (iii) improperly

9  calculated damages from Hartford's in-cash redemption based on PSF's total Sigma

10 losses.  But Dr. Ferrell considered and rejected all of BNYM's arguments on these

11 issues.  With respect to liquidity, Dr. Ferrell found that the substantial depth in the

12 market for Sigma MTNs was inconsistent with a liquidity discount.  For that reason,

13 Dr. Ferrell's sales price – which is based on actual sales of Sigma by BNYM – is

14 eminently reliable.  With respect to sales of securities other than Sigma, Dr. Ferrell

15 rejected BNYM's simplistic examination of market prices in favor of a much more

16 thorough analysis.  With respect to damages from Hartford's in-cash redemption,

17 Dr. Ferrell calculated damages consistently with PSF's claim that it was entitled to

18 the same treatment as Hartford.

19     In short, there is nothing unreliable about Dr. Ferrell's opinions or the

20 processes he used to reach them.  BNYM mischaracterizes his expert reports and

21 analysis therein to hide the fact that BNYM is not really concerned about his

22 methods.  BNYM just does not like the conclusions he reaches.  Given Dr. Ferrell's

23 qualifications and the extensive analysis underlying his opinions, there is no basis

24 for BNYM's motion to exclude his testimony.

25 **II.    Statement of Facts**

26     Dr. Ferrell is an economics expert with a Ph.D. focusing on econometrics and

27 finance from the Massachusetts Institute of Technology.  (Report of Allen Ferrell

28 ("Ferrell Report") ¶ 1, Declaration of Kieran Ringgenberg ISO BNYM's MILs

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2607384

- 2 -

Case No. SACV 10-00198-JST (ANx)
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MIL
NO. 2 TO EXCLUDE OPINIONS OF ALLEN FERRELL

("Ringgenberg Decl."), Ex. D.)  He has a J.D. from Harvard Law School, where he is currently the Greenfield Professor of Securities Law.  (*Id.*)  He is also a faculty associate at Harvard's Kennedy School of Government.  (*Id.* ¶ 2.)  In addition, Dr. Ferrell formerly was a member of the Board of Economic Advisors to FINRA, during which time his responsibilities included review of FINRA's structured product rules.  (*Id.* ¶¶ 3-4.)

Dr. Ferrell has also testified before the U.S. Senate Subcommittee on Securities, Insurance, and Investment and presented to, among others, the Securities and Exchange Commission, the World Bank, the Structured Products Association, and the National Bureau of Economic Research.  (*Id.* ¶ 4.)  He also has written widely in the area of securities regulation, corporate governance, and capital markets from a law and economics perspective and has been an expert witness on structured products and securities damages issues.  (*Id.*; *see also id.* at Ex. A (Dr. Ferrell's curriculum vitae).)

Based on Dr. Ferrell's extensive qualifications, PSF asked him to analyze the economic evidence as relates to whether the DBT's position in Sigma was consistent with its investment guidelines.  (*Id.* ¶ 10.)  PSF also asked to Dr. Ferrell to measure damages assuming liability is found.  (*Id.*)  Based on his analysis, Dr. Ferrell reached the following principal conclusions:

- "The DBT II Fund's position in Sigma was inconsistent with the objective of safeguarding principal by February 29, 2008 (at the latest).  Indeed, prior to February 29, 2008 there was significant evidence indicating the riskiness of Sigma's MTNs."

- "Damages are approximately $77 million based on the losses that PSF would have avoided had it received the same benefits provided to the Hartford Funds, in the form of a redemption at $1 per unit."

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2607384

- 3 -

Case No. SACV 10-00198-JST (ANx)
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MIL
NO. 2 TO EXCLUDE OPINIONS OF ALLEN FERRELL

- "Damages from [BNYM's] failure to sell the Sigma MTNs ranges from $62 million to $67 million depending on the date BNY should have sold in light of the Investment Guidelines."

(*Id.*)  In forming these opinions, Dr. Ferrell relied on his extensive background in economics and experience in the investment industry.  (*Id.* ¶¶ 1-4, Ex. A.)  He considered academic articles, dozens of analyst reports, market commentary, data compilations concerning Sigma (including data regarding MTN sales and ratio trades), reports regarding DBT (including its holdings and redemptions), and communications between BNYM and Sigma's representatives and the ratings agencies.  (*Id.*, Appendix A.)  In addition, Dr. Ferrell reviewed the factual record concerning the parties' relationship, as evidenced by the contractual agreement, relevant correspondence, and depositions taken in this action.  (*Id.*)

Dr. Ferrell also offered various opinions in response to those of BNYM's experts, John W. Peavy III and Edmon W. Blount.  (*See* Rebuttal Report of Allen Ferrell ("Ferrell Rebuttal Report"), Ringgenberg Decl., Ex. E.)

## III.   There Is No Basis to Exclude Dr. Ferrell's Opinions

To be admissible, expert testimony need only be reliable, helpful to the trier of fact, and presented by a witness qualified to be an expert. Fed. R. Evid. 702; *see also Viera v. City of El Monte*, No. CV 04-06082 MMM (Rzx), 2006 WL 6626761, at *9 (C.D. Cal. May 2, 2006).  In *Daubert* and *Kumho Tire*, the Supreme Court gave trial judges the responsibility to exclude expert testimony that does not meet these requirements. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 594-97 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141-42 (1999).  However, "[a] district court's gatekeeper role under *Daubert* is not intended to supplant the adversary system or the role of the jury." *Viera*, 2006 WL 6626761, at *10 (citation omitted).  Thus, the test for reliability is flexible and "the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 advisory committee's note; *see also Daubert*, 509 U.S. at 594 ("The inquiry envisioned by

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2607384

- 4 -

Case No. SACV 10-00198-JST (ANx)
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MIL
NO. 2 TO EXCLUDE OPINIONS OF ALLEN FERRELL

1  Rule 702 is, we emphasize, a flexible one."). Dr. Ferrell's opinions are admissible

2  pursuant to this framework.

3  **A.    Dr. Ferrell Is an Economics Expert with Extensive Knowledge of**

4  **Structured Products and the Investment Industry**

5       Although BNYM does not seriously challenge Dr. Ferrell's qualifications, its

6  motion contains fleeting references to his opinions as being "entirely academic."

7  (*See, e.g.*, BNYM's MIL No. 2 at 5:22-6:2.)  But Dr. Ferrell's academic credentials

8  are hardly a basis for criticism.  Dr. Ferrell is an economics expert with a Ph.D.

9  focusing on econometrics and finance from the Massachusetts Institute of

10 Technology.  (Ferrell Report ¶ 1, Ringgenberg Decl., Ex. D.)  He has a J.D. from

11 Harvard Law School, where he is currently the Greenfield Professor of Securities

12 Law.  (*Id.*)  He is also a faculty associate at Harvard's Kennedy School of

13 Government.  (*Id.* ¶ 2.)  As Rule 702 expressly contemplates that an expert may be

14 qualified on the basis of education and academic expertise, Dr. Ferrell is qualified

15 on these credentials alone.  Fed. R. Evid. 702; *see also Burlington N., Inc. v.*

16 *Boxberger*, 529 F.2d 284, 286-87 (9th Cir. 1975) (professor with doctorate in

17 economics "was sufficiently qualified as an expert"); *Scott v. Ross*, 140 F.3d 1275,

18 1286 (9th Cir. 1998) (professor qualified as an expert based on his years of study

19 and writing).

20      Moreover, BNYM's statement that Dr. Ferrell has no firsthand experience in

21 the investment industry is incorrect.  (*See* BNYM's MIL No. 2 at 1:2-5.)  Dr. Ferrell

22 formerly was a member of the Board of Economic Advisors to FINRA, during

23 which time his responsibilities included review of FINRA's structured product rules.

24 (Ferrell Report ¶¶ 3-4, Ringgenberg Decl., Ex. D.)  Dr. Ferrell has also testified

25 before the U.S. Senate Subcommittee on Securities, Insurance, and Investment and

26 presented to, among others, the Securities and Exchange Commission, the World

27 Bank, the Structured Products Association, and the National Bureau of Economic

28 Research.  (*Id.* ¶ 4.)  He also has written widely in the area of securities regulation,

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2607384

- 5 -

Case No. SACV 10-00198-JST (ANx)
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MIL
NO. 2 TO EXCLUDE OPINIONS OF ALLEN FERRELL

1  corporate governance, and capital markets from a law and economics perspective

2  and has been an expert witness on structured products and securities damages issues.

3  (*Id.*; *see also id.* at Ex. A (Dr. Ferrell's curriculum vitae).)

4       In light of his economic expertise, Dr. Ferrell is extremely qualified to opine

5  on the issues addressed in his report, a point that BNYM does not dispute.[1]

6  **B.    Dr. Ferrell's Opinion that BNYM Acted Imprudently by Holding**

7        **Sigma Is Reliable**

8        **1.    Dr. Ferrell's Opinion Is Based on Economic Principles**

9       BNYM attacks the methodology underlying Dr. Ferrell's conclusion that

10 Sigma was too risky to hold in DBT, erroneously claiming that it is not reliably

11 grounded in principles of economics. (*See, e.g.,* BNYM's MIL No. 2 at 1:7-10,

12 10:7-12:3.)  In making this argument, BNYM attempts to liken Dr. Ferrell's reports

13 to the affidavit submitted by an economist in another case. (*See id.* at 12:4-16

14 (citing *Mid-State Fertilizer Co. v. Exch. Nat'l Bank of Chicago*, 877 F.2d 1333 (7th

15 Cir. 1989)).)  BNYM's comparison of Dr. Ferrell's report with the affidavit in

16 *Mid-State Fertilizer* is nothing short of ridiculous.

17      In *Mid-State Fertilizer*, the expert material at issue was not a formal report

18 but rather a seven-sentence affidavit containing a list of conclusions. *See id.* at

19 1338-39.  The affidavit was devoid of facts or reasoning, and no basis for the

20 conclusions was provided. *See id.*  A sentence at the end merely attributed the

21 opinions to the expert's "education, training and experience as well as [his] review

22 of documents." *Id.* at 1339.  Indeed, *Mid-State Fertilizer* did not even deal with the

23 admissibility of the expert's affidavit but whether the affidavit raised a genuine issue

24 of material fact sufficient to defeat summary judgment. *Id.*  In that context, the

25 _____

26      [1] As discussed in connection with Ms. Borg-Brenner, the fact that
   Dr. Ferrell's expertise is not specifically targeted to securities lending is irrelevant to
27 his qualifications to serve as an economics expert in this matter. (*See* PSF's Opp. to
   MIL No. 1 Part III.A; *see also United States v. Garcia*, 7 F.3d 885, 890 (9th Cir.
28 1993) ("[An expert's] lack of particularized expertise goes to the weight accorded
   her testimony, not to the admissibility of her opinion as an expert.").)

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2607384

- 6 -

Case No. SACV 10-00198-JST (ANx)
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MIL
NO. 2 TO EXCLUDE OPINIONS OF ALLEN FERRELL

1  court explicitly noted that "affidavits supporting and opposing motions for summary

2  judgment must do more than present something that will be admissible in evidence."

3  *Id.* Dr. Ferrell's reports bear *no* resemblance to the seven-sentence affidavit in

4  *Mid-State Fertilizer.*

5      BNYM criticizes Dr. Ferrell's methodology, claiming that he does not rely on

6  economic principles or identify a purported "threshold" for determining when a

7  security is too risky to hold. (*See* BNYM's MIL No. 2 at 10:12-16.) This is false.

8  Dr. Ferrell analyzes whether it was reasonable for BNYM to hold Sigma in light of

9  DBT's own investment guidelines, including the key objective of safeguarding

10 principal. (Ferrell Report ¶¶ 6, 10, Ringgenberg Decl., Ex. D.) Thus, the guiding

11 principle behind Dr. Ferrell's analysis is that a security that violates investment

12 guidelines is too risky to hold. This position should not be controversial, especially

13 because BNYM's own expert invokes DBT's guidelines in support of his opinions.

14 (*See* Expert Report of Edmon W. Blount Part VI (stating that BNYM's purchase of

15 Sigma MTNs was consistent with DBT's guidelines), Declaration of Alison L.

16 Plessman in Support of PSF's Motions *in Limine* ("Plessman Decl.") ¶ 4, Ex. 3 at

17 179-87.)[2]

18      In this case, Dr. Ferrell concluded that Sigma was too risky to hold because

19 doing so was inconsistent with DBT's express objective of safeguarding principal

20 by February 29, 2008, at the latest. (Ferrell Report ¶¶ 10-11, 17, 24, Ringgenberg

21 Decl., Ex. D.) Dr. Ferrell's selection of February 29, 2008 was conservative

22 because, by that time, pricing and concerns from market commentators clearly

23 established the substantial riskiness of holding Sigma. (*Id.* ¶ 24.) As Dr. Ferrell

24 further explained at his deposition, "there was very serious risk to Sigma given the

25

26      [2] BNYM is wrong in claiming that Dr. Ferrell cites no economic research or
literature. (*See, e.g.,* Ferrell Report ¶¶ 12, 18 & notes, Ringgenberg Decl., Ex. D;
27 *see also id.,* Appendix A at 25 (listing academic articles considered); Ferrell
Rebuttal Report ¶ 16, Appendix A (academic articles considered in rebuttal),
28 Ringgenberg Decl., Ex. E.)

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2607384

- 7 -

Case No. SACV 10-00198-JST (ANx)
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MIL
NO. 2 TO EXCLUDE OPINIONS OF ALLEN FERRELL

1  market pricing." (*See* Deposition of Allen Ferrell at 86:8-9, Declaration of

2  Alison L. Plessman in Opposition to BNYM's Motions *in Limine* ("Plessman Opp.

3  Decl.") ¶ 7, Ex. 6 at 58.)  Dr. Ferrell testified that "[b]asically Sigma was trading at

4  a yield that was equivalent to a triple C." (*Id.* at 86:9-11, 89:17-90:7, 130:17-20,

5  (based on market pricing, as of February 29, 2008, the yield on Sigma MTNs was

6  comparable to triple C), 138:10-139:3, Plessman Opp. Decl. ¶ 7, Ex. 6 at 58-63; *see*

7  *also* Ferrell Report ¶ 29 (analyzing analyst report showing that the market price of

8  Sigma MTNs reflected that they were no longer investment grade), Ringgenberg

9  Decl., Ex. D.)

10      As BNYM's own experts acknowledge, the major credit rating agencies

11  consider a triple C rating to reflect a "very high credit risk" and "real possibility of

12  default." (*See* Expert Report of Robert Glenn Hubbard ("Hubbard Report"), Ex. 21,

13  Plessman Decl. ¶ 2, Ex. 1 at 85; *see also* Expert Report of John W. Peavy III

14  ("Peavy Report"), Ex. 3 (describing triple C ratings as "predominantly speculative,

15  substantial risk, or in default"), Plessman Decl. ¶ 14, Ex. 13 at 574.)  Given this

16  substantial risk of default, Dr. Ferrell concluded that BNYM's decision to continue

17  to hold Sigma was inconsistent with DBT's objective of safeguarding principal.

18          **2.      Dr. Ferrell Extensively Analyzed the Risks of Holding Sigma**

19      Dr. Ferrell analyzed the underlying factors that made Sigma MTNs so risky.

20  In his reports, Dr. Ferrell described precisely what he reviewed, the basis for his

21  opinion that Sigma was too risky to hold, and how this conclusion was drawn with

22  reference to specific facts.  As Dr. Ferrell explained, his opinion is based primarily

23  on:  (1) the pricing of Sigma MTNs, which indicated that the market viewed Sigma

24  as carrying significant risk; (2) statements by various market actors and

25  commentators relating to the riskiness of Sigma MTNs; and (3) BNYM's own

26  communications regarding the significant risk associated with holding Sigma.

27  (Ferrell Report ¶ 11, Ringgenberg Decl., Ex. D.)  Although BNYM admits that

28  Dr. Ferrell identified these factors as supporting his opinion that Sigma was too

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2607384

- 8 -

Case No. SACV 10-00198-JST (ANx)
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MIL
NO. 2 TO EXCLUDE OPINIONS OF ALLEN FERRELL

1  risky to hold, BNYM claims that Dr. Ferrell does not explain how the factors form

2  the basis of his opinion. (*See* BNYM's MIL No. 2 at 11:7-12:3.) This is nonsense.

3      With respect to market price, Dr. Ferrell explained that "[t]he price at which

4  Sigma's MTNs were trading in the market is a direct market indicator of the

5  market's assessment of the riskiness of Sigma's MTNs . . . [because a] buyer will

6  demand a discount relative to par value in order to compensate for the risk they are

7  bearing as a result of purchasing Sigma MTNs." (Ferrell Report ¶ 17, Ringgenberg

8  Decl., Ex. D.)[3]  To assess the riskiness of holding Sigma in 2008, Dr. Ferrell

9  analyzed specific sales data, including sales by BNYM on behalf of itself and clients

10  other than PSF. (*Id.* ¶¶ 17, 25, 29-30, 38, 41, Ex. B (listing prices at which BNYM

11  sold Sigma MTNs), Ex. E (listing bids received by BNYM for Sigma MTNs); *see*

12  *also* Ferrell Rebuttal Report ¶ 26 (analyzing bids for Sigma MTNs to rebut

13  Dr. Peavy's conclusions regarding illiquidity), Ringgenberg Decl., Ex. E.)

14  Dr. Ferrell found that prices for Sigma MTNs reflected substantial discounts relative

15  to par, indicating that market participants believed they carried substantial risk of

16  default. (Ferrell Report ¶ 17, Ringgenberg Decl., Ex. D.)[4]

17      Dr. Ferrell's opinion that Sigma was too risky to hold is also based on his

18  analysis of risks discussed by market commentators. For example, Dr. Ferrell

19

_____

[3] BNYM does not challenge this methodology, nor could it. Dr. Ferrell's

20  approach of inferring the collective judgment of the market from market prices was
used by Dr. Hubbard, one of BNYM's own experts. (Hubbard Report ¶ 13 ("In my

21  analysis, I rely primarily on market prices and market indicators, as this information
incorporates the general sentiment of the market."), Plessman Decl. ¶ 2, Ex. 1 at 15;

22  *see also* BNYM's Reply ISO MSJ at 11:28-12:4 (describing Dr. Ferrell's
methodology as an admission).)

23      [4] In light this extensive analysis of actual sales data, BNYM's claim that
Dr. Ferrell did not analyze alternatives to holding Sigma is demonstrably false.

24  (BNYM's MIL No. 2 at 10:17-11:6; *see also* Ferrell Report ¶ 42, Appendix A
(analyzing data and materials relating to ratio trades), Ringgenberg Decl., Ex. D.)

25  Moreover, BNYM's claim that Dr. Ferrell did not weigh the purported "risks" of
selling or trading Sigma MTNs is nonsensical. BNYM suggests that ▉▉▉▉▉▉▉▉▉

26  ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

27  ▉▉▉▉▉▉▉▉▉▉▉.) BNYM overlooks the fact that

28  fluctuations in the value of Sigma are risks associated with holding, not selling.
Selling does not create risk; it is the end of risk because losses are fixed.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership including
Professional Corporations

2607384

- 9 -

Case No. SACV 10-00198-JST (ANx)
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MIL
NO. 2 TO EXCLUDE OPINIONS OF ALLEN FERRELL

1    analyzed market commentary showing that by early 2008, the entire structured

2    investment vehicle ("SIV") sector was under extreme duress due to declines in asset

3    prices and increased volatility.  (Ferrell Report ¶¶ 18, 22, Ringgenberg Decl.,

4    Ex. D.)  He also analyzed commentary showing that the market was concerned

5    about Sigma in particular, especially Sigma's extensive reliance on repo agreements

6    and sales to meet maturing liabilities.  (*Id.* ¶¶ 19-21, 26-27, 29.)  Dr. Ferrell

7    explained that repos increased risk to holders of Sigma MTNs by increasing the risk

8    of default and decreasing the amount of assets available to satisfy the claims of

9    holders of Sigma MTNs.  (*Id.* ¶¶ 19-21.)  Dr. Ferrell also considered market

10   commentary relating to other Sigma risks, including Sigma's lack of a bank sponsor,

11   which left it vulnerable to collapse, and the declining market value of Sigma's

12   underlying assets.  (*Id.* ¶¶ 22, 29.)  Finally, Dr. Ferrell explained how BNYM's own

13   communications with Sigma's representatives and the ratings agencies further

14   solidified his opinion that Sigma was too risky to hold in DBT.  (*Id.* ¶¶ 23, 28, 31.)

15       In light of this extensive analysis, Dr. Ferrell's opinion that BNYM acted

16   imprudently by holding Sigma is reliable, and there is no basis to exclude it.  Even if

17   they had merit (which they do not), BNYM's criticisms of Dr. Ferrell's opinion

18   merely go to weight, rather than admissibility.  *See, e.g., Ellis v. Pa. Higher Educ.*

19   *Assistance Agency*, No. CV 07-04498 DDP (CTx), 2008 WL 5458997, at *2-3, 6

20   (C.D. Cal. Oct. 3, 2008); *Board of Trs. of AFTRA Ret. Fund. v. JPMorgan Chase*

21   *Bank, N.A.*, No. 09 Civ. 686(SAS), 2011 WL 6288415, at *6, 14 n.124 (S.D.N.Y.

22   Dec. 15, 2011) ("deficiencies in 'support and detail for the conclusions' are an issue

23   of weight rather than admissibility") (citation omitted).  BNYM is free address these

24   issues through cross-examination; *see also Daubert*, 509 U.S. at 596 ("Vigorous

25   cross-examination, presentation of contrary evidence, and careful instruction on the

26   burden of proof are the traditional and appropriate means of attacking shaky but

27   admissible evidence."); *JPMorgan*, 2011 WL 6288415, at *6 ("The experts' failure

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2607384

- 10 -

Case No. SACV 10-00198-JST (ANx)
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MIL
NO. 2 TO EXCLUDE OPINIONS OF ALLEN FERRELL

1 | to value the Sigma MTNs and compare the value to market prices is appropriately
2 | dealt with on cross-examination.").

3 | **C.** **BNYM's Apparent Disagreement with Dr. Ferrell's Damages**
4 | **Calculations Is Not a Basis to Exclude Them**

5 | Under *Daubert*, the test for admitting expert testimony is not the correctness

6 | of expert's conclusions but the soundness of the process used to reach them.

7 | *Daubert*, 509 U.S. at 595 (the "focus, of course, must be solely on principles and

8 | methodology, not on the conclusions they generate"); *see also JPMorgan*, 2011 WL

9 | 6288415, at *4 ("[T]he court's focus must be on the principles and methodologies

10 | underlying the expert's conclusions, rather than on the conclusions themselves.").

11 | The bulk of BNYM's motion is spent challenging the conclusions that Dr. Ferrell

12 | reaches.  This is improper.

13 | **1.** **Dr. Ferrell Considered the Liquidity of the Market for Sigma**

14 | BNYM challenges Dr. Ferrell's conclusions regarding the price at which

15 | Sigma MTNs could have been sold.  (*See* BNYM's MIL No. 2 Part III.B.1.)

16 | BNYM's criticism is preposterous as Dr. Ferrell's sales prices are based on data

17 | from actual sales and ratio trades that BNYM and its affiliates arranged on behalf of

18 | themselves and clients other than PSF.  (*See* Ferrell Report ¶¶ 38, 41, Exs. B, D,

19 | Ringgenberg Decl., Ex. D.)

20 | Despite the fact that the sales price Dr. Ferrell used is based on data from

21 | BNYM's actual sales, BNYM claims that the price is speculative because Dr. Ferrell

22 | fails to factor in a liquidity discount.  (*See* BNYM's MIL No. 2 at 13:10-13,

23 | 13:20-24.)  But Dr. Ferrell expressly considered and rejected BNYM's argument

24 | that a liquidity discount would have applied.  (*See* Ferrell Rebuttal Report ¶¶ 23-26

25 | (rebutting Dr. Peavy's conclusion regarding the prices at which BNYM could have

26 | sold Sigma MTNs), Ringgenberg Decl., Ex. E.)

27 | To the contrary, Dr. Ferrell documented substantial depth in the market for

28 | Sigma securities as well as a substantial volume of ratio trades.  (*See* Ferrell Report

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2607384

- 11 -

Case No. SACV 10-00198-JST (ANx)
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MIL
NO. 2 TO EXCLUDE OPINIONS OF ALLEN FERRELL

1   Exs. B & D, Ringgenberg Decl., Ex. D; *see also* Ferrell Rebuttal Report ¶ 26,

2   Ringgenberg Decl., Ex. E.)  Indeed, Dr. Ferrell found that BNYM itself "was able to

3   sell substantial amounts of Sigma MTNs in the period after it became clear the

4   Sigma MTNs no longer conformed to the DBT II Fund's Investment Guidelines."

5   (Ferrell Report ¶ 41 & Ex. B, Ringgenberg Decl., Ex. D.)  Dr. Ferrell also identified

6   additional bids received by BNYM for Sigma MTNs in 2008.  (*Id.* ¶ 41 & Ex. E;

7   Ferrell Rebuttal Report ¶ 26, Ringgenberg Decl., Ex. E.)  Because these bids are

8   consistent with BNYM's actual sales prices, Dr. Ferrell found that "BNY could have

9   sold substantially more Sigma MTNs than it actually did at approximately the same

10  prices."  (Ferrell Report ¶ 41; *see also id.* ¶ 42 (showing that ███████████

███████████████████████████████████████████████████████████

███████).)  In light of this extensive analysis, there is no merit to BNYM's suggestion

13  that Dr. Ferrell failed to consider liquidity issues or that his opinions are otherwise

14  unreliable.

15      To support its claim that Dr. Ferrell's extensive analysis is somehow

16  unreliable, BNYM fundamentally mischaracterizes his methodology.[5] ███████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████ (*See*

19  BNYM's MIL No. 2 at 7:13-19, 17:10-25, 18:10-18.)  Contrary to BNYM's

20  suggestion, Dr. Ferrell's analysis is not limited to ████████████████████████

███████████████████████████████████████████████████████████

██████████████████ (*See* Ferrell Report Ex. B, Ringgenberg Decl.,

23  Ex. D.)  In calculating damages, Dr. Ferrell applied the price that BNYM obtained

24  in its first sale after the date on which Dr. Ferrell concluded that BNYM should have

25

26      [5] BNYM also misrepresents that Dr. Ferrell claims that the Sigma MTNs
27  could have been sold "for near par value."  (*See* BNYM's MIL No. 2 at 19:22-24.)
    Dr. Ferrell's opinion is not that Sigma could have been sold at near par value but
28  that Sigma could have been sold at *market value*.  (Ferrell Report ¶ 38, Ringgenberg
    Decl., Ex. D.)

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2607384

- 12 -

Case No. SACV 10-00198-JST (ANx)
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MIL
NO. 2 TO EXCLUDE OPINIONS OF ALLEN FERRELL

1    sold PSF's Sigma MTNs.  (*Id.* ¶¶ 37-38, Ex. E.)  Dr. Ferrell's selection of these

2    prices was appropriate because they were similar to other sales and bids in the

3    market at the time.  (*See id.* ¶ 41, Ex. B, Ringgenberg Decl., Ex. D; Ferrell Rebuttal

4    Report ¶ 26, Ringgenberg Decl., Ex. E.)

5            BNYM also contends that ███████████████████████████████████████████

     ████████████████████████████████████████████████████████████.  (*See* BNYM's MIL

7    No. 2 at 14:28-15:3, 19:17-24; *see also id.* at 19:9-16.)  This argument misleadingly

8    suggests that the sales identified by Dr. Ferrell are a complete listing of all of the

9    transactions in the market.  A complete list is simply not possible because sales data

10   for Sigma MTNs is generally not public; Sigma was not traded on a national

11   exchange but was sold through private placements.  Nevertheless, Dr. Ferrell

12   identified more than ██████████████████████████████████████████████

     ██████████████████████████████████████████████████████████████████████

14   (*See* Ferrell Report Ex. B, Ringgenberg Decl., Ex. D.)  Dr. Ferrell found that these

15   sales demonstrate the liquidity of the market for Sigma.  (*Id.* ¶ 41.)  The existence of

16   other sales additionally buttresses Dr. Ferrell's conclusion.  (*See* Morgan Stanley

17   Mem. at PSF00107947 (showing that Morgan Stanley sold $100 million of Sigma

18   on January 18, 2008 at 92% of par), Plessman Opp. Decl. ¶ 8, Ex. 7 at 66.)

19           BNYM also criticizes Dr. Ferrell's use of bids to determine the depth of the

20   market for Sigma, claiming that "bids and quotes do not always represent genuine

21   offers and do not always lead to actual sales."  (*See* BNYM's MIL No. 2 at

22   20:9-23 & n.6.)  BNYM forgets that its own experts relied on bids as indicia of

23   market liquidity.  (*See* Peavy Report, Ex. 11 n.1 (relying on the Bank of England

24   Financial Market Liquidity Index, which incorporates information on bid and offer

25   prices on bonds, currencies, and stocks), Plessman Decl. ¶ 14, Ex. 13 at 584;

26   Hubbard Report, Ex. 31 (also relying on the Bank of England Liquidity Index),

27   Plessman Decl. ¶ 2, Ex. 1 at 97.)  Moreover, Dr. Ferrell found that the bids (which

28   were just one piece of information he considered) were consistent with data from

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2607384

- 13 -

Case No. SACV 10-00198-JST (ANx)
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MIL
NO. 2 TO EXCLUDE OPINIONS OF ALLEN FERRELL

1  contemporaneous sales. (*See* Ferrell Report ¶ 41, Ex. B, Ringgenberg Decl., Ex. D;

2  Ferrell Rebuttal Report ¶ 26, Ringgenberg Decl., Ex. E.)[6]

3      BNYM's arguments as to why a liquidity discount would have applied are

4  based on reports from its experts and self-serving testimony from one of its own

5  witnesses. (*See* BNYM's MIL No. 2 at 3:21-24, 14:12-14, 15:4-16, 16:10-17:2,

6  17:26-18:9, 19:12-16, 19:22-24, 20:18-23.)[7] This is nothing more than an

7  inappropriate attack on Dr. Ferrell's conclusions. Indeed, BNYM explicitly argues

8  that Dr. Ferrell's conclusions are unreliable because one of its experts said so: "As

9  Professor Sundaresan explains . . . ███████████████████████████████

███████████████████████████████████████████████████████████████████████

████████████████████████████████████ (*Id.* at 21:4-22:2.) This is

12  improper. Dr. Ferrell's conclusions are not unreliable merely because BNYM or its

13  experts disagree with them. *See, e.g.*, *JPMorgan*, 2011 WL 6288415, at *12

14  ("[M]ere disagreement with [an expert's] conclusions is insufficient to render her

15  opinions inadmissible *ipse dixit*."). Experts' conflicting conclusions "ordinarily go

16

17
_____

18  [6] BNYM also argues that the bids identified by Dr. Ferrell are not evidence of
depth in the market because two of the largest came from Sigma itself, which at the

19  time was struggling to find cash to meet ongoing maturities. (*See* BNYM's MIL
No. 2 at 19:25-20:8.) But it does not matter to whom a sale is made. The fact that
Sigma was repurchasing its own securities is clearly evidence of one more willing

20  buyer in the market. BNYM's argument also ignores evidence that large sales
actually took place. (*See* Ferrell Report, Ex. B ███████████████████
████████████████████████), Ringgenberg Decl., Ex. D; Morgan Stanley
Mem. at PSF00107947 (showing that Morgan Stanley sold $100 million of Sigma

22  on January 18, 2008 at 92% of par), Plessman Opp. Decl. ¶ 8, Ex. 7 at 66.)

23  [7] BNYM also cites PSF's annual reports, an academic paper by Dr. Ferrell, a
December 2007 email regarding SIVs sponsored by Citigroup, and two emails about

24  DBT in general. (*See id.* at 3:24-28, 14:3-12, 13:15-18, 14:20-24, 15:20-16:2.)
BNYM's reliance on these documents is misplaced as none of them mention Sigma

25  or specifically address the market for Sigma MTNs. (*See id.*; *see also* Ringgenberg
Decl., Exs. T, W, EE-HH.) BNYM's citation of a May 2008 email setting forth

26  Wachovia's "formal response on Sigma" is similarly misplaced. (*See* BNYM's MIL
No. 2 at 3:28-4:4, 14:24-27, 16:3-16.) Wachovia's formal response is nothing more

27  than a self-serving statement to its own clients in response to a few sales of Sigma
MTNs. (*See* Womack Email at PSF00093097, Ringgenberg Decl., Ex. N.) The

28  informal comments in the email make clear that Wachovia believed those sales did
not reflect actual market value. (*Id.*)

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2607384                          - 14 -

Case No. SACV 10-00198-JST (ANx)
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MIL
NO. 2 TO EXCLUDE OPINIONS OF ALLEN FERRELL

1    to the weight of the testimony rather than to its admissibility." *Viera*, 2006 WL
2    6626761, at *10 (citation omitted).

3        In addition, BNYM's criticism of Dr. Ferrell's damages calculations ignores
4    that PSF does not have to establish damages with the absolute precision that BNYM
5    suggests is required. "[T]hough the *fact* of damage must be clearly established, the
6    *amount* need not be proved with the same degree of certainty, but may be left to
7    reasonable approximation or inference. Any other rule would mean that sometimes
8    a plaintiff who had suffered substantial damage would be wholly denied recovery
9    because the particular items could not, for some reason, be precisely determined."
10   6 Witkin, Summary 10th (2005) Torts, § 1551. This maxim is especially applicable
11   in this case because any uncertainty as to the price at which Sigma could have been
12   sold is a direct result of BNYM's tortious failure to sell the MTNs after it became
13   clear that Sigma no longer conformed to DBT's investment guidelines. *See*
14   *Clemente v. California*, 40 Cal. 3d 202, 219 (1985) ("If plaintiff's inability to prove
15   his damages with certainty is due to defendant's actions, the law does not generally
16   require such proof.").

17                **2.    Dr. Ferrell's Damages Analysis Is Not Based on Hindsight**

18       BNYM argues that Dr. Ferrell's damages analysis is premised on hindsight
19   because Dr. Ferrell applies his more conservative investment strategy only with
20   respect to Sigma and not with respect to securities in DBT that matured in full. (*See*
21   BNYM's MIL No. 2 at 1:22-26, 13:15-18, 22:16-19.) According to BNYM,
22   applying Dr. Ferrell's "more conservative investment" strategy would have led
23   BNYM to sell other securities that presented "similar levels of risk." (*Id.* at 7:20-24,
24   22:21-24.) Because those other securities later paid in full at maturity, BNYM
25   claims its so-called ▮▮▮▮▮▮▮ strategy benefitted PSF by avoiding losses
26   those other sales would have generated. (*Id.* at 1:26-2:1, 22:12-16, 22:24-28
27   (relying on report of Dr. Sundaresan, one of BNYM's experts.) Because Dr. Ferrell
28   did not consider the losses that BNYM claims its ▮▮▮▮▮▮▮ strategy

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2607384                        - 15 -

Case No. SACV 10-00198-JST (ANx)
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MIL
NO. 2 TO EXCLUDE OPINIONS OF ALLEN FERRELL

1  purportedly avoided, BNYM contends that Dr. Ferrell's damages analysis is

2  unreliable. (*Id.* at 13:13-15, 22:5-11, 22:20-21, 22:28-23:2.)

3  　　　In making this argument, BNYM and Dr. Sundaresan fundamentally

4  misconstrue Dr. Ferrell's opinions. Relying on pricing data, BNYM and

5  Dr. Sundaresan contend that other securities in DBT presented similar levels of risk

6  as Sigma MTNs. (*Id.* at 22:21-23.) As an initial matter, Dr. Sundaresan's analysis

7  is fundamentally flawed because it is based on IDC pricing data that is dramatically

8  higher than actual market prices used by Dr. Ferrell. (*Compare* Rebuttal Report of

9  Suresh Sundaresan ("Sundaresan Report"), Exs. 12, 13 (using a "trigger price" of

10  $97.896), Ringgenberg Decl., Ex. F, *with* Ferrell Report, Ex. D (using actual market

11  price of $0.840), Ringgenberg Decl., Ex. D; *see also* Deposition of Suresh

12  Sundaresan at 141:5-16, Sept. 30, 2011 ("It is true I only use the IDC prices as a

13  signal for transacting – to trigger these transactions."), Plessman Opp. Decl. ¶ 9,

14  Ex. 8 at 70.)

15  　　　Moreover, Dr. Ferrell's analysis of risk was not a simplistic examination of

16  only market prices. As described above, Dr. Ferrell's opinion was based on

17  extensive analysis of other factors related to Sigma's riskiness. The guiding

18  principle behind Dr. Ferrell's analysis is that a security that violates investment

19  guidelines is too risky to hold. Dr. Ferrell concluded that Sigma was too risky to

20  hold because it was inconsistent with DBT's investment guidelines, including the

21  express objective of safeguarding principal. (Ferrell Report ¶¶ 10-11, 17, 24,

22  Ringgenberg Decl., Ex. D.) Dr. Ferrell did not need to include sales of other

23  securities in his damages analysis because PSF does not allege that other securities

24  violated DBT's investment guidelines. Unless BNYM is now confessing that it held

25  other securities that violated DBT's investment guidelines, BNYM's argument

26  misses the mark.

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2607384

- 16 -

Case No. SACV 10-00198-JST (ANx)
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MIL
NO. 2 TO EXCLUDE OPINIONS OF ALLEN FERRELL

3.    **Dr. Ferrell Properly Calculated Damages to PSF from**
**Hartford's In-Cash Redemption**

As BNYM acknowledges, PSF alleges that it suffered damages when BNYM failed to uniformly enforce an in-kind redemption restriction by allowing Hartford and other co-investors in DBT to redeem their units in cash at full value. (*See* BNYM's MIL No. 2 at 23:7-13; *see also* Ferrell Report ¶ 34, Ringgenberg Decl., Ex. D.)  Dr. Ferrell calculated damages to PSF from BNYM's decision to allow Hartford and others to proceed with in-cash redemptions. (Ferrell Report ¶ 35, Ringgenberg Decl., Ex. D.)  As Dr. Ferrell explained: "If PSF had been allowed to redeem its units for $1 in cash as Hartford was, PSF would have received $1 per unit for its holdings, and would have avoided losses due to [BNYM's] investments in Sigma.  Damages, therefore, are equal to the losses PSF suffered due to [BNYM's] investments in Sigma . . . $77,409,408." (*Id.*)

BNYM claims that Dr. Ferrell's damages calculation does not "fit" the facts of this case because PSF's claimed damages are its increased exposure to Sigma, not the totality of PSF's Sigma losses. (*See* BNYM's MIL No. 2 at 2:2-9, 8:5-12, 23:14-21.)  But BNYM's description of PSF's claimed damages is not accurate.  As a fiduciary, BNYM was required to administer the securities lending program impartially, meaning that BNYM was required to treat all investors the same.  Here, BNYM favored Hartford and other clients by allowing them to redeem their units in cash while prohibiting PSF from doing the same.  This was improper because PSF was entitled to the same treatment that BNYM accorded Hartford and those other clients.  If BNYM had treated PSF equally, PSF would have been allowed to redeem its units in cash, and PSF would have avoided all Sigma losses.  This is precisely the damages figure that Dr. Ferrell calculates. (*See* Ferrell Report ¶ 35, Ringgenberg Decl., Ex. D.)

Dr. Ferrell also calculates PSF's damages from increased exposure to Sigma. (*Id.* ¶ 35 n.83 (calculating increased exposure damages of approximately

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2607384

- 17 -

Case No. SACV 10-00198-JST (ANx)
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MIL
NO. 2 TO EXCLUDE OPINIONS OF ALLEN FERRELL

1   $8.5 million).)  BNYM claims that this calculation is flawed because Dr. Ferrell

2   should have factored in gains from increased exposure to other securities in DBT.

3   (*See* BNYM's MIL No. 2 at 23:25-24:10.)  However, BNYM never proffers any

4   evidence that PSF's exposure to other securities actually increased or that PSF

5   profited from such exposure.  Tellingly, Dr. Sundaresan (BNYM's own expert) did

6   not factor in PSF's alleged gains from increased exposure to other securities when

7   calculating damages.  (*See* Sundaresan Report ¶ 25 (calculating damages assuming

8   BNYM had not allowed Hartford and other investors to improperly redeem their

9   units in cash), Exs. 3.1, 3.2, Ringgenberg Decl., Ex. F.)  BNYM's contention that

10   Dr. Ferrell was required to include such considerations – when its own expert did

11   not – is absurd.  Indeed, BNYM's criticism of Dr. Ferrell's calculation of PSF's

12   increased exposure damages is perplexing given that BNYM's own expert actually

13   calculated a *higher* number.  (*See id.* (calculating damages of nearly $10.8 million

14   dollars).)

15 **IV.   Conclusion**

16       For the foregoing reasons, PSF respectfully requests that the Court deny

17   BNYM's Motion *in Limine* No. 2 to exclude the opinions of Dr. Ferrell.

18

19 Dated:  March 26, 2012             Respectfully submitted,

20                        IRELL & MANELLA LLP

21

22

23                       By: *Alison L. Plessman*

                           Alison L. Plessman

24                            Attorneys for Plaintiff

                           Pacific Select Fund

25

26

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2607384

- 18 -

Case No. SACV 10-00198-JST (ANx)
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MIL
NO. 2 TO EXCLUDE OPINIONS OF ALLEN FERRELL