1    BOIES, SCHILLER & FLEXNER LLP
2    Jonathan D. Schiller *(pro hac vice)*
     jschiller@bsfllp.com
3    575 Lexington Ave., 7th Floor
     New York, NY 10022
4    Telephone: 212.446.2300
5    Facsimile: 212.446.2350

6    David W. Shapiro (SBN 219265)
7    dshapiro@bsfllp.com
     Kieran P. Ringgenberg (SBN 208600)
8    kringgenberg@bsfllp.com
     1999 Harrison St., Suite 900
9    Oakland, CA 94612
     Telephone: 510.874.1000
10   Facsimile: 510.874.1460

11   *Attorneys for Defendants*

12

13              UNITED STATES DISTRICT COURT

14              CENTRAL DISTRICT OF CALIFORNIA

15

16   PACIFIC SELECT FUND,              )   Case No.  SACV 10-00198 JST (ANx)
                                        )
17        Plaintiff,                    )
                                        )   **DEFENDANTS' REPLY IN
18                                      )   SUPPORT OF THEIR MOTION
                                        )   *IN LIMINE* NO. 2 TO EXCLUDE
19        v.                            )   OPINIONS OF PLAINTIFF'S
                                        )   EXPERT ALLEN FERRELL**
20   THE BANK OF NEW YORK               )
     MELLON, a New York state chartered )
21   bank, and BNY MELLON, N.A., a      )
22   nationally-chartered bank,         )   Date:  April 16, 2012
                                        )   Time: 1:30 p.m.
23        Defendants.                   )   Dept.: Courtroom 10A, Santa Ana
                                        )
24                                      )
                                        )   **Complaint Filed:** February 17, 2010
25                                      )   **Trial Date:**  April 10, 2012
26   _____)   **Judge:**  Hon. Josephine Staton Tucker

27

28

BOIES, SCHILLER & FLEXNER LLP · OAKLAND, CALIFORNIA

1

# **<u>TABLE OF CONTENTS</u>**

2

3  INTRODUCTION ................................................................................ 1

4  ARGUMENT ...................................................................................... 3

5     I.    Professor Ferrell's Testimony That BNY Mellon Breached the

6          SLAA Is Not Based on Any Identified Economic Principles ............. 3

7         A. Professor Ferrell Provides *No Method*, Much Less a Reliable

8            Method, to Support His Conclusion ........................................ 3

9         B. The Case Law Holds that Expert Economists Must Support

          Their Opinions with a Reliable Basis in Economics ...................... 5

10         C. BNY Mellon's Criticisms Go to Admissibility, Not Weight .......... 7

11     II.   Professor Ferrell's Damages Analysis on PSF's Prudence Claim

12          is Inadmissible ...................................................................... 9

13         A. Professor Ferrell Employs No Economic Methodology for

14            Determining the Price at Which BNY Mellon Could Have

          Sold DBT's Inventory of Sigma MTNs......................................... 10

15         B. Professor Ferrell Cannot Support his Conclusion that a Mass

16            Sell-Off of BNY Mellon's Sigma MTNs Into An Illiquid

          Market Would Leave Prices Unchanged ...................................... 11

17         C. Alleged Additional Sales and Unauthenticated Bids Do Not

18            Make Professor Ferrell's Report Admissible ................................ 13

19         D. The Unreliability of Professor Ferrell's Opinions Go to

20            Admissibility, Not Weight ...................................................... 15

21     III.  Professor Ferrell's Damages Analysis on PSF's Prudence Claim

        Is Based on Hindsight ............................................................ 17

22     IV.  Professor Ferrell's Damages Analysis on PSF's Redemption

23          Claim Ignores Critical Facts ..................................................... 19

24         A. Damages on PSF's Redemption Policy Claim Do Not

25            Amount to Its Full Sigma Losses.............................................. 19

26         B. Professor Ferrell Failed to Account for PSF's Exposure to

          Profitable Securities. ............................................................ 20

27  CONCLUSION.................................................................................... 22

28

B O I E S ,  S C H I L L E R  &  F L E X N E R  L L P
O A K L A N D ,  C A L I F O R N I A

i

# TABLE OF AUTHORITIES

## CASES

*Blue Dane Simmental Corp. v. American Simmental Ass'n,*
178 F.3d 1035 (8th Cir. 1999) ........................................................ 9, 11

*Board of Trs. of AFTRA Ret. Fund. v. JPMorgan Chase Bank, N.A.*
No. 09 Civ. 686, 2011 WL 6288415 (S.D.N.Y. Dec. 15, 2011) ...................... 3, 8

*Clayworth v. Pfizer, Inc.,*
49 Cal.4th 758 (2010) .............................................................. 18, 20

*Clemente v. California,*
40 Cal. 3d 202 (1985) .................................................................. 16

*Daubert  v. Merrill Dow Pharm., Inc.,*
43 F.3d 1311 (9th Cir. 1995) ............................................................ 20

*Ellis v. Pa. Higher Educ.Assistance Agency,*
No. CV 07-04498 DDP (CTx), 2008 WL 5458997 (C.D. Cal. Oct.
3, 2008) ................................................................................. 8

*Hicks v. Drew,*
117 Cal. 305 (1897) .................................................................... 18

*Hynix Semiconductor Inc. v. Rambus Inc.,*
No. 00-20905, 2008 WL 73689 (N.D. Cal. Jan. 5, 2008) ...................... 6, 7, 9, 11

*In re Fresh Del Monte Pineapples Antitrust Litig.,*
No. 04–md–1628, 2009 WL 3241401 (S.D.N.Y. Sept. 30, 2009) .............. passim

*Mid-State Fertilizer Co. v. Exch. Nat. Bank of Chicago,*
877 F.2d 1333 (7th Cir. 1989) .................................................. 5, 10, 11

*Viera v. City of El Monte,*
No. CV 04-06082 MMM (Rzx), 2006 WL 6626761 (C.D. Cal.
2006) ............................................................................... 15, 16

## RULES

Fed. R Evid. 702 ........................................................................ 8

## STATUTES

Cal. Civ. Code § 3531 .................................................................. 20

## TREATISES

6 Witkin, Summary 10th (2005) Torts, § 1548 ........................................................ 19

DEFS' REPLY ISO MIL NO. 2 TO EXCLUDE FERRELL OPINIONS

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

# INTRODUCTION

Pacific Select Fund ("PSF") fails to meet its burden of showing that Professor Ferrell's expert opinion is based on reliable economic principles.

First, PSF concedes that the basis for Professor Ferrell's expert opinion lies in his credentials as an economist. (PSF Opp.[1] at 5.) Yet PSF does not dispute the fact that he fails to invoke any reliable economic principles to support his testimony ██████████████████████████████████████████████████

████████████  PSF's primary tactic in defense of Professor Ferrell is to invoke his assertion that there were risks in connection with medium term notes ("MTNs") issued by Sigma Finance Inc. ("Sigma") in early 2008. (PSF Opp. at 7-10, *e.g.*, "Dr. Ferrell Extensively Analyzed the Risks of Holding Sigma.")  However, as Defendants (collectively, "BNY Mellon") have explained, the fatal flaw in Professor Ferrell's testimony was not his failure to catalogue the risks facing Sigma.  Nor was it simply the conclusion he reached.  To the contrary, the fatal flaw in Professor Ferrell's report was his failure to invoke any reliable principles or methods from the field of economics in the course of reaching his conclusion.

Second, PSF does not dispute the fact that Professor Ferrell fails to invoke any reliable economic principles to support his damages analysis.  Instead, PSF contradicts its own position.  On the one hand, PSF claims that Professor Ferrell ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████  (PSF Opp. at 12.)   But PSF points to no

---

[1]  PSF's Opposition to Defs' Motion *in Limine* No. 2 (Dckt # 267) is cited as "PSF Opp."  Exhibits to the Declaration of Kieran Ringgenberg in Support of Defendants' Motions *in Limine* (Dckt. # 254) are cited as "Ringgenberg MIL Decl. Ex. ___."  PSF's Statement of Genuine Issues and Additional Material Facts (Dckt. # 98) is cited as "PSFSGI."  Exhibits to the Reply Declaration of Kieran Ringgenberg in Support of Defendants' Motions *in Limine*, filed herewith, are cited as "Ringgenberg Reply Decl. Ex. ___."

1

1    actual analysis based in articulated principles of economics.  To the contrary, ███

2    ████████████████████████████████████████████████████████

3    ████████████████████████████████████████████████████████

4    ████████████████████████████████████████████████████████

5    ██████████████████████    As PSF does not dispute, Professor Ferrell made no

6    attempt to build a model to determine the sales price, or in any other way to identify

7    any economic principles that would allow him to account for the extraordinary

8    illiquidity afflicting the markets in 2008, including the markets for SIVs and Sigma

9    in particular.

10    Third, PSF does not – because it cannot – defend Professor Ferrell's decision

11    to calculate PSF's damages by examining only a singe cherry-picked failing

12    security (Sigma), while entirely ignoring the other securities that paid in full.  Not

13    surprisingly, PSF locates no principle in economic theory to support such a

14    brazenly one-sided assessment.  In lieu of defending Professor Ferrell's analysis,

15    PSF criticizes the *method* used by BNY Mellon's expert to address this same issue

16    that Professor Ferrell failed to address.  Not only are PSF's attacks meritless, but

17    they demonstrate the absence of *any method at all* in Professor Ferrell's damages

18    calculation.

19    Finally, PSF provides no case law, either from the Ninth Circuit, California

20    courts, or anywhere else, to support its unprecedented damages theory in

21    connection with BNY Mellon's redemption policy for participants in DBT.  There

22    is simply no basis for PSF's claim that its damages are based not to the harm PSF

23    allegedly suffered, but a purely hindsight-based approximation of the benefits

24    allegedly received by an unrelated third party.

25    Because PSF has failed to meet its burden of showing that Professor

26    Ferrell's opinions have a reliable basis in the principles of economics, the Court

27    should exclude his testimony at trial.

28

DEFS' REPLY ISO MIL NO. 2 TO EXCLUDE FERRELL OPINIONS

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

B O I E S   ,   S C H I L L E R   &   F L E X N E R   L L P

O A K L A N D   ,   C A L I F O R N I A

**ARGUMENT**

PSF acknowledges that "the court's focus must be on the principles and methodologies underlying the expert's conclusions, rather than on the conclusions themselves." (PSF Opp. at 11 (quoting *Board of Trs. of AFTRA Ret. Fund. v. JPMorgan Chase Bank, N.A.* No. 09 Civ. 686, 2011 WL 6288415, at *4 (S.D.N.Y. Dec. 15, 2011) ("AFTRA")).) Professor Ferrell's expert testimony is inadmissible *precisely because* it is not grounded in any reliable economic methodology.

## I.   Professor Ferrell's Testimony That BNY Mellon Breached the SLAA Is Not Based on Any Identified Economic Principles

PSF cannot point to any economic principles or methodology that grounds Professor Ferrell's testimony, instead pointing only to his catalogue of facts. Yet as BNY Mellon showed in its motion in limine – and backed up with case law that PSF does not address – Professor Ferrell's failure to base his opinions on reliable principles of economics makes his testimony inadmissible.[2]

### A.   Professor Ferrell Provides *No Method*, Much Less a Reliable Method, to Support His Conclusion

To defend Professor Ferrell's report against the charge that he fails to invoke any reliable economic methodology, PSF points to his catalogue of the risks facing Sigma in 2008. (PSF Opp. at 7-10.) But Professor Ferrell's testimony is not inadmissible for failing to identify the risks facing Sigma. Rather, his testimony is inadmissible is because he fails to use any articulated economic principle in reaching his conclusion.

While Professor Ferrell is correct that Sigma faced risks in 2008, this is

---

[2] PSF contends, in a footnote, that Professor Ferrell cited economic research and literature in his reports. (PSF Opp. at 7 n.2.) But PSF does not – because it cannot – point to any place where Professor Ferrell applies principles or methods based on that literature in reaching his conclusions. Rather, he cites economic literature only when discussing background information and in his generic "Materials Considered" appendices.

DEFS' REPLY ISO MIL NO. 2 TO EXCLUDE FERRELL OPINIONS

1   where a prudence analysis *begins*, not where it ends.  As BNY Mellon explained in

2   its motion *in limine*, an economic inquiry regarding the reasonableness of holding

3   Sigma MTNs would apply reliable economic principles in the course of weighing

4   the risk that Sigma would default against the known costs of selling (which, even

5   under Professor Ferrell's flawed price assessment, would have resulted in a massive

6   loss of principal (Ringgenberg MIL Decl. Ex. D at Ex. D (Ferrell Aff. Rep.)); and

7   the potential benefits of holding (including the likelihood that Sigma MTN holders

8   would recover at or near par, regardless of whether Sigma defaulted).  Despite

9   PSF's assertions of reliability in its opposition brief, Professor Ferrell does none of

10  this.  He invokes no economic principles, models, or methodology – much less ones

11  that are reliable, tested, and peer reviewed – to support his verdict that ███████

12  ████████████████████████████████████████████████████

13       PSF's only attempt to identify a methodology, grounded in economic

14  principles, to support Professor Ferrell's opinion is to assert ████████████

15  ████████████████████████████████████████████

16  ████████████████████████████████████████████████████

17  ██████████   This misses the point.  The issue is whether Professor Ferrell

18  deploys any principles from the field of economics to explain *why* holding Sigma

19  violated the guidelines.  It is no answer ████████████████████████████

20  ██████████████████████████

21  ───────────────────────

22  [3] PSF defends Professor Ferrell by noting that BNY Mellon's expert Edmon Blount

23  "invokes DBT's guidelines in support of his opinions." (PSF Opp. at 7:12-17.)
    This is just a distraction.  <u>First</u>, in the Section of his report cited by PSF, Mr. Blount

24  notes that when BNY Mellon purchased the Sigma's MTNs, they met the objective
    parameters of DBT's investment guidelines – listing permitted maturity lengths,

25  credit ratings, and categories of securities.  (Declaration of Alison Plessman in
    Support of PSF's Motions in Limine (Dckt. # 240) Ex. 3 at 180-182.)  This has

26  nothing to do with Professor Ferrell's entire subjective assertion ███████████

27  ████████████████████████████████████████████████████

28  ████████████████████████████████████████████████████
    ██████████   <u>Second</u>, Mr. Blount does not cite the investment guidelines "as

                                        4

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

**B.  The Case Law Holds that Expert Economists Must Support Their Opinions with a Reliable Basis in Economics**

PSF's attempt to distinguish Professor Ferrell's expert report from the expert affidavit in *Mid-State Fertilizer Co. v. Exch. Nat. Bank of Chicago*, 877 F.2d 1333 (7th Cir. 1989) is unavailing.  (*See* PSF Opp. at 6-7.)  While PSF is right that Professor Ferrell's report is *longer* than the affidavit in *Mid-State*, both are defective for the same reasons.  Like the *Mid-State* expert, Professor Ferrell does not cite or apply any economic principle, develop any model, or cite any economic literature to support his key claims.  *Id.* at 1340.  Instead, both experts did nothing more than review "materials produced in discovery and drew inferences from the record," which is simply not an adequate basis for an expert economist's opinion. *Id.*  Each "offered the court his CV rather than his economic skills," and thus both are properly excluded.  *Id.*  Like other cases following *Mid-State*, the Court should not exempt Professor Ferrell's opinions from the requirement that they have a reliable basis in economics merely because they come in a long, formal report.  *See, e.g., In re Fresh Del Monte Pineapples Antitrust Litig.*, No. 04–md–1628, 2009 WL 3241401, at *16 (S.D.N.Y. Sept. 30, 2009) (comparing economist's inadmissible expert report to flawed affidavit in *Mid-State* on the grounds that economist "failed sufficiently to explain what [his] 'reasoned economic analysis' entailed and how it was applied to the facts cited in his Report").

As BNY Mellon pointed out in its motion, the case law supporting its position extends well beyond the opinion in *Mid-State*.  For example, a report similar to Professor Ferrell's was at issue in *Hynix Semiconductor Inc. v. Rambus Inc.*, No. 00-20905, 2008 WL 73689, at *13-14 (N.D. Cal. Jan. 5, 2008).  In

the guiding principle" to support his conclusion that BNY Mellon's decision to hold the Sigma MTNs was prudent.  Instead, he draws on both his thirty years of experience in the investment industry and articulates an objectively verifiable framework to evaluate prudence, and his opinions are supported by citations to the literature of his field.

5

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

1   *Hynix*, the court excluded an economist's opinion about what caused the

2   defendant's increase in market power.  In doing so, the court noted that the

3   economist failed to "explain the 'reliable methods' he applied to decide that

4   [defendant's] conduct caused its increase in market power." (*Id.*)  The court further

5   noted that while the report was "rich in assumed facts, it lacks any expert analysis

6   of why those assumed facts lead to a finding of causation."  BNY Mellon raises

7   identical objections to Professor Ferrell's report.  Namely, while his report is rich in

8   its catalogue of assumed facts (*i.e.,* his catalogue of the risks facing Sigma in 2008),

9   "it lacks any expert analysis of *why* those assumed facts" outweigh competing

10  considerations that favored holding the Sigma MTNs and, accordingly, why they

11  should "lead to a finding" that BNY Mellon was imprudent. (*Id.*) (emphasis

12  added.)  PSF's opposition does not even mention, much less try to distinguish, the

13  opinion in *Hynix*.

14       Similarly, in *In re Fresh Del Monte*, 2009 WL 3241401, at *16 (cited in

15  BNY Mellon motion *in limine* and unaddressed by PSF), the court rejected an

16  economist's testimony on the grounds that "it does not demonstrate any particular

17  scientific expertise that can be assessed for reliability or that would ultimately assist

18  the finder of fact." (internal quotation omitted).  As in *Hynix*, the economist in

19  *Fresh Del Monte* testified as to whether the defendant's conduct had certain

20  anticompetitive effects.  However, rather than bringing the tools of economics to

21  bear and clearly identifying the methodology he employed, the expert merely

22  "recite[d] selective facts in the record and then offer[ed] his own legal

23  conclusions."  The court went on to note that "[a]lthough Dr. Cotterill testified at

24  his deposition that he performed 'a reasoned economic analysis, based upon a

25  review of the facts in this case' . . . he failed sufficiently to explain what this

26  'reasoned economic analysis' entailed and how it was applied to the facts cited in

27  his Report." (*Id.*)

28       The grounds for excluding the economist's report in *Fresh Del Monte* mirror

6

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

1   the grounds for excluding Professor Ferrell's report in this case. As explained

2   above, Professor Ferrell identifies and applies no principles of economics to the

3   assumed facts he so extensively catalogues. Indeed, Professor Ferrell's transition

4   from facts to conclusion comes so fast, it is hard to notice. He says:

5   ████████████████████████████████████

6   ████████████████████████████████████

7   ████████████████████████████████████

8   ████████████████████████████████████

9   ████████████████████████████████████

10  ████████████████

11  (Ringgenberg MIL Decl. Ex. D at ¶ 24 (Ferrell Aff. Rep.)) Note the absence of *any*

12  *analysis at all* bridging Professor Ferrell's recitation of the facts and his asserted

13  opinion. As in *Hynix* and *Fresh Del Monte*, there is no appeal to economic

14  principles or methodology. In particular, there is no application of economic

15  principles ████████████████████████████

16  ████████. Thus, just as the economist's ungrounded opinions in *Hynix* and

17  *Fresh Del Monte* were inadmissible, so is Professor Ferrell's

18          Notably, in contrast BNY Mellon's discussion of *Mid-State*, *Hynix*, and

19  *Fresh Del Monte*, PSF cites no case – none – in which an economist's opinion was

20  admitted without a clear and reliable basis in economic principles and methods.

21          **C.      BNY Mellon's Criticisms Go to Admissibility, Not Weight**

22          PSF claims that, even if BNY Mellon's criticisms are valid, they address the

23  weight of Professor Ferrell's testimony and not its admissibility. PSF is wrong.

24  BNY Mellon has shown that Professor Ferrell provides no economic methodology

25  at all, much less a reliable, tested, and peer-reviewed methodology, to support his

26  opinion that holding the Sigma MTNs past February 29, 2008 was so unreasonable

27  as to violate the SLAA's standard of care. As noted above, the economists' reports

28  in both *Hynix* and *Fresh Del Monte* were excluded for lack of any economic

7

1   analysis.  Professor Ferrell's testimony is likewise inadmissible.  *See* Fed. R Evid.

2   702 ("Expert opinion is admissible only if . . . the testimony is the product of

3   reliable principles and methods.").

4        PSF cites only two cases to support its position.  Neither decision even

5   considers a challenge to an economist's opinion, and neither is availing.  *Ellis v. Pa.*

6   *Higher Educ. Assistance Agency,* No. CV 07-04498 DDP (CTx), 2008 WL

7   5458997 (C.D. Cal. Oct. 3, 2008) admits testimony based on the expert's hands-on

8   professional experience with consumer credit and his application of "reliable

9   principles and methods" of his field, including that he "explains how credit stigma

10  is calculated and that this amount reflects a correlation used by bankers."  *Id.* at *6.

11  In *AFTRA*, the court likewise admitted testimony of individuals with substantial

12  directly applicable practical experience who "employ the same techniques in their

13  proffered testimony as they do in practice."  2011 WL 6288415 at *4.[4]  By contrast,

14  Professor Ferrell lacks any such relevant practical experience and has not identified

15  any "reliable principles and methods" or any established "technique" from his field

16  of economics (or anything else) that supports his conclusions.[5]

17  _____

18  [4] *AFTRA* allowed defendants' economist, Dr. Koehn, to testify, but the only issue as to his testimony was his reliance on another expert.  *See id.* at *14.  Plaintiffs also

19  put forward a law professor with a physics background, Professor Black, to testify as to matters of "corporate governance" and "corporate finance." *Id.* at *1, *5.  The

20  court found his articulated methodology sufficiently reliable and grounded in his

21  discipline to permit his testimony in part, and cited finance literature in support of that decision. *Id.* at *7 & n.71.  The Court also excluded testimony in which

22  Professor Black merely "draws inferences that should be left to the finder of fact"

23  or were "outside his area of professional expertise." *Id.* at *7, *9.

24  [5] PSF claims that Professor Ferrell has "firsthand experience in the investment industry." (PSF Opp. at 5.)  But PSF does not claim that Professor Ferrell has ever

25  made any investment decision as a professional.  PSF's sole basis for claiming that

26  he has "firsthand" investment experience is the fact that he has testified before Congress and served on the Board of Economic Advisors to FINRA.  In both

27  instances, Professor Ferrell's contribution was that of an academic specializing in

28  law and economics.  In any event, neither PSF nor Professor Ferrell identifies any specific basis in his experience for his opinions, and whether based on experience

8

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

BOIES. SCHILLER & FLEXNER LLP
OAKLAND. CALIFORNIA

1    As noted above, PSF has cited no case in which an economist's opinion was

2    admitted despite lacking a clear and reliable basis in economic principles and

3    methods, backed by some support in economic literature.  Professor Ferrell's

4    opinions lack these features and are thus inadmissible.  *See, e.g., Blue Dane*

5    *Simmental Corp. v. American Simmental Ass'n*, 178 F.3d 1035, 1041-42 (8th Cir.

6    1999) (affirming exclusion of economist where proponent failed to prove his

7    method was "typically used" by "other economists"); *In re Fresh Del Monte*, 2009

8    WL 3241401, at *16; *Hynix Semiconductor*, 2008 WL 73689, at *13-14.

9    **II.    Professor Ferrell's Damages Analysis on PSF's Prudence Claim Is**
         **Inadmissible**

10

11    Professor Ferrell exhibits the same deficiency – the failure to employ any

12    methodology based on reliable principles of economics – with respect to his

13    damages analysis.  Among the most striking omissions in Professor Ferrell's report

14    is the lack of any method for modeling or otherwise incorporating market illiquidity

15    into his opinion; ███████████████████████████████████████

16    ████████████████████████████████ PSF's

17    main line of defense is simply to point to ██████████████████

18    ████████████████████████████████████████

19    ████████████████████████████████████████

20    ████████████████████████████████████

21    ████████████████████████████████████████

22    ████████████████████████████████████████

23    ████.  Accordingly, he "does not demonstrate any particular scientific expertise

24    that can be assessed for reliability or that would ultimately assist the finder of fact."

25    *In re Fresh Del Monte*, 2009 WL 3241401 at *16.

26

27

28    or economic theory, Professor Ferrell's opinions lack any articulated basis in any
      objectively verifiable principle or method.

9

A.    **Professor Ferrell Employs No Economic Methodology for Determining the Price at Which BNY Mellon Could Have Sold DBT's Inventory of Sigma MTNs**

Professor Ferrell's method for determining the price at which BNY Mellon would have been able to sell DBT's inventory of Sigma MTNs is simplistic and untethered to reliable principles of economics. ███████████████████ ████████████████████████████ ██████████████████████████████████████████████ █████████████████████ There is no reference to any principle of economics whatsoever.

PSF claims that BNY Mellon "mischaracterizes" Professor Ferrell's methodology, ████████████████████████████ ████████████████████████████████████ ████████████████████████████████████████ ███████████████████████████████████ To the contrary, PSF admits in the next sentence that "[i]n calculating damages, Dr. Ferrell applied the price that BNYM obtained in its first sale after the date on which Dr. Ferrell concluded that BNYM should have sold [DBT's] Sigma MTNs." (PSF Opp. at 12-13.) ███████████████ █████████████████████████████████████ ██████████████

In fact, Professor Ferrell does not employ any reliable economic method to determine the price at which BNY Mellon could have sold DBT's inventory of Sigma MTNs. ██████████████████████████████ ████████████████████████████████████████ █████████████████ That is to say, "nothing in [Professor Ferrell's damages analysis] draws on the skills of an economist." *Mid-State Fertilizer*, 877 F.2d at 1340.

DEFS' REPLY ISO MIL NO. 2 TO EXCLUDE FERRELL OPINIONS

BOIES, SCHILLER & FLEXNER LLP

OAKLAND, CALIFORNIA

1   As with its half-hearted attempt to defend Professor Ferrell's liability

2   analysis, PSF cites no cases in which an economist's opinion was admitted without

3   a clear and reliable basis in economic principles and methods. The authorities

4   before the court establish that if an economist's testimony lacks a reliance basis in

5   economics, it must be excluded. *See Blue Dane Simmental*, 178 F.3d at 1041-42; *In*

6   *re Fresh Del Monte*, 2009 WL 3241401 at *16; *Hynix Semiconductor*, 2008 WL

7   73689 at *13-14; *Mid-State Fertilizer*, 877 F.2d at 1340.

8   **B.    Professor Ferrell Cannot Support his Conclusion that a Mass Sell-**

9   **Off of BNY Mellon's Sigma MTNs into An Illiquid Market Would Leave Prices Unchanged**

10   In its motion *in limine*, BNY Mellon provided substantial evidence that the

11   market for commercial paper in 2008, in particular for SIV issued debt, was

12   extraordinarily illiquid. Simply put, cash was very hard to come by. (BNY

13   Mellon's Motion *in Limine* No. 2 (Dckt # 250) ("BNY Mellon MIL No. 2") at 13-

14   15.) BNY Mellon's evidence included a statement from Professor Ferrell himself,

15   who noted that even independent of the conditions in 2008, "[t]he secondary market

16   for most structured products is highly illiquid." (Ringgenberg MIL Decl. Ex. GG at

17   22 (Bethel, J. & Ferrell, A., "Policy Issues Raised by Structured Products,"

18   *Harvard Law and Economics Discussion Paper No. 560* (2006.) Neither PSF in its

19   motion, nor Professor Ferrell in his report, contest this evidence.

20   Additionally, BNY Mellon provided substantial evidence that selling large

21   quantities of a security into illiquid markets over a short period of time – as PSF

22   claims BNY Mellon should have done with DBT's inventory of Sigma MTNs –

23   would significantly depress the price at which the security sold. (BNY Mellon MIL

24   No. 2 at 15-17.)

25   What response PSF does offer to the evidence of liquidity entirely misses the

26   mark. ██████████████████████████████████████████████████

27   ████████████████████████████████████████████

28   ████████████████████████████████████████████████ That

11

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA



1  is simply a misstatement. ████████████████████████████

2  ████████████████████████████████████████████████

3  ████████████████████████████████████████████████

4  ████████████████████████████████  (Declaration of Kieran

5  Ringgenberg in Support of Defendants' Motion for Summary Judgment (Dckt. #

6  71).) ████████████████████████████████████████████

7  ████████████████████████████████████████████████

8  ████████████████████████████████████████████████

9  ████████████████████████████████████████████

10  ████████████████████████████████████████████████

11  ████████████████████████████████████████████████

12  ████████████████████████████████████████████

13  ████████████████████████████████████████████████

14  ████████████████████████████████████████████████

15  ████████████████████████████████████████████████

16  ████████████████████████████████████████████  [6]

17      Given all of this evidence, one would expect Professor Ferrell to develop an

18  economic model that accounted for the crushing market illiquidity in 2008, *along*

19  *with* prices for smaller sales of Sigma MTNs and other relevant factors, in order to

20  ascertain the price that a mass sell-off of DBT's Sigma MTNs would yield. ████

─────────────────

22  [6] PSF's other responses, also in a footnote, are likewise inadequate.  (PSF Opp. at

23  14 n.7.) ████████████████████████████████████████████

24  ████████████████████████████████████████████████

25  ████████████████████████████████████████████████

26  ████████████████████████████████████████████████

27  ████████████████████████████████████████████████

28  ████████████████████████████████████████████████

DEFS' REPLY ISO MIL NO. 2 TO EXCLUDE FERRELL OPINIONS

BOIES, SCHILLER & FLEXNER LLP   OAKLAND, CALIFORNIA



His opinion is pure speculation and should be excluded.

### C.    Alleged Additional Sales and Unauthenticated Bids Do Not Make Professor Ferrell's Report Admissible

PSF replies on the assertion that there were more Sigma MTN sales on the market than Professor Ferrell lists in his Exhibit B.  (PSF Opp. at 13.)  However, whatever small number of additional sales may have taken place (and PSF cites only three (PSF Opp. at 13, Ex. 7)), PSF does not claim – because it cannot claim – that they demonstrated a fully liquid market.

(Ringgenberg MIL Decl. Ex. D at ¶¶ 22, 26 (Ferrell Aff. Rep.))  Accordingly, even if a small number of additional sales had occurred, they would not change the fact that

PSF also points to Professor Ferrell's evidence of "bids" for Sigma MTNs,

But as BNY Mellon showed in its motion *in limine*, Professor Ferrell could not establish that these bids were authentic offers, as opposed to parties merely testing the waters.  Indeed, the documents underlying Professor Ferrell's alleged bids indicate that many were *not* genuine offers.  (BNY Mellon MIL No. 2 at 21, n.6.)  PSF never addresses this critical flaw in Professor Ferrell's appeal to "bids."[7]  Nor does PSF address the fact

_____

[7] PSF claims that Ferrell found that the "bids were consistent with data from contemporaneous sales."  (PSF Opp. at 13-14.)  But this does not show either that

13

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

the bids he relied upon were for much smaller amounts than the amounts of Sigma MTNs held in DBT.  (*Id.* at 18.)[8]  Perhaps Professor Ferrell could have constructed an economic model that, using standard economic principles, took these factors into account.  But he did not. ██████████████████████████████████ ███████████████████████████████  That is not a reliable basis in economics and it is not admissible.

Instead of rebutting this point, PSF's only reply is to claim that BNY Mellon's "own experts relied on bids as indicia of market liquidity."  (PSF Opp. at 13.)  This mischaracterizes the evidence.  BNY Mellon's experts used the Bank of England Liquidity Index ("the BOE Index") to measure market liquidity because it is a well-established metric published by the central bank of one of the most advanced economies in the world.  The BOE Index, in turn, considers bid-ask spreads as one of nine indicators that, when taken together, show relative market liquidity.  (See Ringgenberg MIL Decl. Ex. U at Ex. 31 (Hubbard Rep.)).  That is entirely different than, as Professor Ferrell did, ███████████████████████ ██████████████████████████████████  If Professor Ferrell had used the BOE Index, and then took broader illiquidity into account when modeling the effect of a short-term, mass sell-off on expected prices, *that* might have constituted an application of economic principles.  Instead, Professor Ferrell ███████████████████████████████████

the bids were real (i.e., not test bids) nor how they figured in any application of economic principles.

[8] BNY Mellon noted that two of the largest "bids" on Professor Ferrell's list came from Sigma itself.  PSF does not dispute this.  Instead, PSF claims that "it does not matter to whom a sale is made.  The fact that Sigma was repurchasing its own securities is clearly evidence of one more willing buyer in the market."  (PSF Opp. at 14 n.6.)  But PSF's case is premised on the assertion that in 2008 Sigma was struggling to gain enough liquidity to meet its ongoing maturity obligation.  Accordingly – and PSF does not claim otherwise – Sigma could not be relied on as a stable source of demand in the market for its MTNs if an additional half of billion dollars worth were dumped on the market.

14

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

████████████████████████████████

███████████████████████████████████

███

**D.     The Unreliability of Professor Ferrell's Opinions Go to Admissibility, Not Weight**

PSF claims that BNY Mellon's criticisms do not show that Professor Ferrell's opinions are admissible because they are based, in part, on testimony from BNY Mellon's own expert.  (PSF Opp. at 14.)  But BNY Mellon's experts do not claim that Professor Ferrell chose the *wrong* economic principles or applied them in the wrong way.  Rather, BNY Mellon's expert Professor Suresh Sundaresan points out that ████████████████████████

███████████████████████████████████

███████████████████████████████

██████████████████████  The *absence* of economic methodology, not a disagreement about the application of economic principles, is what makes Professor Ferrell's report inadmissible.

PSF's claims to cite case law in support of its baseless position that BNY Mellon cannot appeal to its own expert to reveal Professor Ferrell's lack of a reliable method.  Specifically, PSF asserts that "[e]xperts' conflicting conclusions 'ordinarily go to the weight of the testimony rather than to its admissibility.'" (PSF Opp. at 14-15) and claims to be quoting *Viera v. City of El Monte*, No. CV 04-06082 MMM (Rzx), 2006 WL 6626761 at *10 (C.D. Cal. 2006).

Here is what *Viera* actually says:

Conflicting testimony concerning the conclusions drawn by experts, *so long as they are based on a generally accepted and reliable scientific principle*, ordinarily go to the weight of the testimony rather than to its admissibility. (*Id.*) (emphasis added, internal citations omitted).

15

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

1    What *Viera* actually shows, when the pertinent portion is revealed, is that

2    the law clearly supports BNY Mellon's position, i.e. that testimony regarding

3    whether an expert employed reliable scientific principles *at all* is determinative

4    of admissibility.

5    Finally, PSF claims that BNY Mellon's criticisms are unavailing because (1)

6    PSF does not have to prove damages with "absolute precision" (PSF Opp. at 15)

7    and (2) BNY Mellon's conduct is the reason that PSF cannot identify the price that

8    a mass sell-off of DBT's Sigma MTNs would have fetched.

9    PSF's first point is irrelevant.  BNY Mellon's criticism of Professor Ferrell is

10   not that he failed to identify the sell-off price for Sigma MTNs with "absolute

11   precision."  A certain amount of imprecision is tolerable; speculation is not.  BNY

12   Mellon's criticism is that Professor Ferrell invoked no economic method at all to

13   arrive at the price he chose.  All he can offer is speculation, and that is inadmissible.

14   PSF's second point is simply false.  It was Professor Ferrell's failure to

15   employ economic principles and methods – not anything that BNY Mellon did or

16   did not do – that renders his damages analysis unreliable and inadmissible.[9]

17

18

19

20

---

21   [9]  PSF cites *Clemente v. California,* 40 Cal. 3d 202, 219 (1985) for the

22   proposition that, "[i]f plaintiff's inability to prove his damages with certainty is
due to defendant's actions, the law does not generally require such proof."  In

23   *Clemente*, the plaintiff sued the state, alleging a highway patrolman negligently

24   failed to identify a hit-and-run motorcyclist.  The plaintiff claimed damages in the
amount he would have recovered from the motorcyclist had the patrolman

25   identified him.  However, as a result of the patrolman's failure to identify the

26   motorcyclist, the plaintiff was unable to determine whether and to what extent he
was insured and, therefore, was unable to prove the amount of damages with

27   certainty.  In contrast, PSF has failed to accurately account for its damages not
because of any actions by BNY Mellon, but rather because its own expert failed to

28   take into account relevant factors or apply any reliable economic method.

16

DEFS' REPLY ISO MIL NO. 2 TO EXCLUDE FERRELL OPINIONS

### III.   Professor Ferrell's Damages Analysis on PSF's Prudence Claim Is Based on Hindsight

As BNY Mellon explained in its motion, PSF's claim in this case is that BNY Mellon took excessive risks by holding Sigma notes in the hopes they would pay at or near par when, PSF says, BNY Mellon should have sold the notes for an immediate loss.  But every security in DBT posed risks during the financial crisis, and BNY Mellon's strategy of holding rather than selling was successful for other securities.  ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ (Ringgenberg MIL Decl. Ex. S at 266:16-267:14, 277:6-278:2 (Rulong Dep. Tr.)) ████████████████████████████████████████████████████████████████████████████████, Professor Ferrell engages in hindsight, plain and simple.

Perhaps realizing the flaw in Professor Ferrell's analysis, PSF does not defend it.  Instead, PSF goes after BNY Mellon's own expert, Professor Sunsaresan.  Specifically, PSF claims that Professor Sundaresan's *method* of identifying the price at which Sigma was trading on Professor Ferrell's February 29, 2008 sale date – and, thus, the price at which PSF's logic requires that *any* security in DBT should have been sold, not just Sigma – was flawed.  (PSF Opp. at 16:3-14.)[10]

But this is nothing more than a distraction.  Whatever the merits of Professor Sundaresan's method, the fact remains that Professor Ferrell did not use *any*

---

[10] PSF notes that Professor Ferrell considered not just the market price, but also market commentary, in determining that Sigma posed unacceptable risks.  (PSF Opp. at 16:15-17.)  But this is irrelevant.  The point is that *whatever* method Professor Ferrell used to determine that Sigma posed unacceptable risk (and as BNY Mellon has shown, there was no real method), he should have applied it to *all* the securities in DBT, not just to Sigma.  PSF does not contest that Professor Ferrell failed to do this.

17

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

1   *method* to consider the other securities in the DBT portfolio and whether they faced

2   risks comparable to Sigma. ████████████████████████████████████████

3   ████████████████████████████████████████████████████████

4   ████████████████   PSF's attack on Professor Sundaresan's analysis about how to

5   address this issue is an implicit acknowledgement that it requires analysis in the

6   first place. ████████████████████████████████████

7   ████████████████████████████████████████████████████████

8   ████████████████████   This, in turn, renders his opinion unreliable and

9   inadmissible.

10      Finally, PSF claims that "Dr. Ferrell did not need to include sales of other

11   securities in his damages analysis because PSF does not allege that other

12   securities violated DBT's investment guidelines." (PSF Opp. at 16.)  PSF again

13   misses the point.  As BNY Mellon explained, had it followed the rule PSF claims it

14   was required to have followed (*i.e.*, sell all securities that appeared at the time to

15   pose risks like Sigma or greater), PSF would have incurred massive losses.  The

16   losses BNY Mellon averted by *not* following that rule should, in turn, offset PSF's

17   actual losses when calculating its damages.  PSF's assertion to the contrary is

18   wrong as a matter of law.  See *Clayworth v. Pfizer, Inc.*, 49 Cal.4th 758, 773 (2010)

19   (noting that under California law, tort damages are "measured based on the net

20   impact of the defendant's actions, offsetting any benefit to the plaintiff against any

21   loss") (citing *Hicks v. Drew*, 117 Cal. 305, 314–315 (1897)).  The point is not

22   avoided merely because PSF styled its complaint to focus on the one security that

23   failed and to ignore the ones that did not; PSF's cherry-picking based on hindsight

24   is the problem, not the solution.

25      By seeking to benefit from BNY Mellon's investment strategy where it was

26   successful and simultaneously recover from BNY Mellon for the one security that

27   failed, PSF seeks to have its cake and eat it too.  This cannot serve as the basis of a

28   reliable damages analysis.

DEFS' REPLY ISO MIL NO. 2 TO EXCLUDE FERRELL OPINIONS

**IV.**   <u>**Professor Ferrell's Damages Analysis on PSF's Redemption Claim Ignores Critical Facts**</u>

PSF does not provide any substantive response to BNY Mellon's argument that Professor Ferrell's damages calculation on PSF's redemption claim is inadmissible.  They provide no case law to support Professor Ferrell's unprecedented first damages theory – ███████████████████████████ ████████████████████████████████████████ ████████████████████   When addressing Professor Ferrell's second damages theory – ████████████████████████   PSF again tries to distract the Court's attention with attacks on BNY Mellon's expert.  Such tactics are unavailing.

**A.**   **Damages on PSF's Redemption Policy Claim Do Not Amount to Its Full Sigma Losses**

PSF alleges it was a breach of duty to allow another client to exit DBT for cash.  The injury that this allegedly caused PSF, as by the Court, was that PSF "assumed an increased proportionate share of the DBT II fund and the Sigma MTNs due to the cash redemptions of other clients, which increased its ultimate Sigma losses."  (Order (Dckt. # 147) at 12.) ██████████████████ ████████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████████

To the contrary, it is hornbook law that "damages are normally awarded for the purpose of compensating the plaintiff for injury suffered, i.e., restoring the plaintiff as nearly as possible to his or her former position."  6 Witkin, Summary 10th (2005) Torts, § 1548, p. 1022. ████████████████████████ ████████████████████████████████████ ████████████████████████████████████████

DEFS' REPLY ISO MIL NO. 2 TO EXCLUDE FERRELL OPINIONS



1   ▮▮▮▮▮▮▮▮▮▮▮.[11]   Accordingly, it is irrelevant and misleading, and

2   therefore it should be excluded.  *See Daubert  v. Merrill Dow Pharm., Inc.*, 43 F.3d

3   1311, 1321 n.17 (9th Cir. 1995).

4       **B.**    **Professor Ferrell Failed to Account for PSF's Exposure to**

5               **Profitable Securities.**

6         Recognizing its first theory is unsupportable, Professor Ferrell also offers a

7   back-up. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

10   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

11   ▮▮▮▮▮▮▮▮   There is no dispute that the law requires the calculation of

12   PSF's damages to take this into account.  *See Clayworth*, 49 Cal. 4th at 773 (tort

13   damages "measured based on the net impact of the defendant's actions, offsetting

14   any benefit to the plaintiff against any loss").

15         PSF first tries to defend Professor Ferrell's analysis by claiming that BNY

16   Mellon provided no evidence that PSF's exposure to other securities increased.

17   This is absurd.  As the Court explained on summary judgment, PSF's own claim is

18   that it "assumed an increased proportionate share of the DBT II fund and the Sigma

19   MTNs due to the cash redemptions of other clients, which increased its ultimate

20   Sigma losses."  (Order (Dckt. # 147) at 12.)  Likewise, ▮▮▮▮▮▮▮▮▮▮

21   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

22   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

23   ▮▮▮▮▮▮▮   (Ringgenberg MIL Decl. Ex. D at 22 n.83 (Ferrell Aff. Rep.))

24   *By Professor Ferrell's own logic,* ▮▮▮▮▮▮▮▮▮▮▮▮

25

26   _____
  [11] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

27   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

28   ▮▮▮▮▮▮▮▮▮▮▮ "The law never requires impossibilities."
Cal. Civ. Code § 3531.

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

1 ██████████████████████████████████████████████████████

2 ████████████

3    PSF next claims that BNY Mellon provided no evidence that the non-Sigma

4 portion of DBT was profitable.  PSF is wrong.  ████████████████████████

5 ████████████████████████████████████████████████████████████

6 ████████████████████████████    Moreover, PSF moved specifically to

7 exclude evidence of its net profits, again admitting it earned ██████████ in

8 DBT over and above its Sigma losses.  (PSF's Motion *in Limine* No. 6 (Dckt. #

9 239) at 4.)

10    PSF's final response is to attack Professor Sundaresan to cover for Professor

11 Ferrell's failure.  PSF claims that Professor Sundaresan did not incorporate PSF's

12 increased exposure to DBT's non-Sigma assets in his own damages calculation.

13 (PSF Opp. at 18.)   As with PSF's earlier attempt to distract from its own expert's

14 failings (see above at 14-15), this too is unavailing.  The purpose of Professor

15 Sundaresan's calculations was to point out certain shortcomings in Professor

16 Ferrell's analysis, not to provide an entirely independent analysis. (Ringgenberg

17 MIL Decl. Ex. F at ¶ 25 (Sundaresan Reb. Rep.))  The fact that Professor

18 Sundaresan did not correct all of Professor Ferrell's errors does not immunize

19 Professor Ferrell's analysis from attack.  More fundamentally, the issue in this

20 motion is whether Professor Ferrell's damages calculation is reliable.  BNY Mellon

21 has shown that it is not.  PSF's attack on Professor Sundaresan's analysis is simply

22 irrelevant.

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

DEFS' REPLY ISO MIL NO. 2 TO EXCLUDE FERRELL OPINIONS

1

## CONCLUSION

2  For the reasons set forth above, BNY Mellon's motion should be granted.

3

4

5  Dated: April 2, 2012                    **BOIES, SCHILLER & FLEXNER LLP**

6                                          By _____

7                                             Kieran Ringgenberg (SBN 208600)
                                              kringgenberg@bsfllp.com
8                                             1999 Harrison St., Suite 900
                                              Oakland, CA 94612
9                                             Telephone: (510) 874-1000
10                                            Facsimile: (510) 874-1460

11                                            *Attorneys for Defendants*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFS' REPLY ISO MIL NO. 2 TO EXCLUDE FERRELL OPINIONS